UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SARA GANNON,

Case No.

Plaintiff,

- against -

**COMPLAINT**

VERIZON COMMUNICATIONS INC.,
VERIZON WIRELESS SERVICES, LLC,
CELLCO INTERNATIONAL LLC,
JOSEPH BANDO,
MICHAEL CIAVARELLA,

**Plaintiff Demands
a Jury Trial**

Defendants.
-------------------------------------------------------------------X

Plaintiff SARA GANNON, by and through her attorneys, DEREK SMITH LAW GROUP,

PLLC, upon information and belief, complains of Defendants as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to the American with Disabilities Act ("ADA") and New York

State Law, based upon the supplemental jurisdiction of this Court pursuant to *United Mine*

*Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory

and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter*

*alia*, disability discrimination, together with hostile work environment, retaliation, and

constructive termination by Defendants.

## JURISDICTION & VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under ADA.

3. Additionally, this Court has supplemental jurisdiction over the related New York State law causes of action asserted in this action pursuant to 28 U.S. Code § 1367.

4. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

5. Plaintiff has complied with all administrative prerequisites for the commencement of this action.

## PARTIES

6. Plaintiff SARA GANNON ("GANNON" or "Plaintiff") was and is an individual female who is a citizen of the State of New York, Putnam County.

7. At all times material, Defendant VERIZON COMMUNICATIONS INC., was and is a foreign business corporation duly existing by the virtue and laws of the State of Delaware, doing business in the State of New York.

8. At all times material, VERIZON WIRELESS SERVICES, LLC, was and is a foreign limited liability company duly existing by the virtue and laws of the State of Delaware, doing business in the State of New York.

9. At all times material, CELLCO INTERNATIONAL LLC, was and is a domestic limited liability company duly existing by the virtue and laws of the State of New York.

10. At all times material, the above corporate entities were joint employers of Plaintiff.

11. At all times material, Defendant JOSEPH BANDO was and is an individual male who is believed to be a citizen of the State of New York.

12. At all times material, Defendant MICHAEL CIAVARELLA was and is an individual male who is believed to be a citizen of the State of New York.

## STATEMENT OF FACTS

13. On or about October 1, 2007, Defendants hired Plaintiff as a Coordinator in Defendants' Continuity Marketing Operations Department at Defendants' Meriden, Connecticut office.

14. At all times material, Plaintiff was an exceptional employee.

15. In or around 2014, Plaintiff transferred to Defendants' North Haven, Connecticut store.

16. In or around 2014, Plaintiff was diagnosed with narcolepsy.

17. At all times material, Plaintiff's narcolepsy causes her to feel extremely tired during the day, fall asleep while doing normal daytime activities, and feel extremely weak.

18. Immediately after Plaintiff was diagnosed, Plaintiff notified Defendants' Human Resource Managers KATIE SUITS, KATIE PHIPPS, and MICHELLE SIELING of her medical condition.

19. In or around 2014, Defendants accommodated Plaintiff's narcolepsy. Defendants allowed Plaintiff to take two 15 minute breaks per day. The two 15 minute breaks would allow Plaintiff to

sit in an empty office, cover herself with her own sweatshirt, and rest for 15 minutes. This accommodation kept Plaintiff's strongest and most dangerous narcolepsy symptoms at bay.

20. Plaintiff's reasonable accommodation allowed Plaintiff to thrive at her position and ensured Plaintiff's condition did not worsen.

21. Despite her serious medical condition, Plaintiff was repeatedly named the top sales representative in all of Defendants' North East region.

22. In or around March of 2015, Defendants abruptly told Plaintiff her accommodation had to be "renewed." Plaintiff was confused; thus far, Plaintiff's reasonable accommodation was working well. Plaintiff saw no legitimate reason to take her reasonable accommodation away.

23. In or around March of 2015, Defendants demanded that Plaintiff transfer to Defendants' Middletown, Connecticut store where she would no longer receive a reasonable accommodation.

24. Plaintiff was adversely affected by the forced transfer because Plaintiff (i) made less money in Defendants' Middletown store and (ii) Plaintiff was not as effective or efficient because she no longer had a reasonable accommodation.

25. In or around March of 2015, while working at Defendants' Middletown store, Defendants demanded that Plaintiff drive home to take two 30 minute breaks every day. Defendants' new "accommodation" was both impractical and dangerous.

26. It became immediately evident that Defendants new "accommodation" did not work. Almost daily, Plaintiff was drowsy and delirious. Plaintiff's condition and narcoleptic-side-effects were extremely dangerous. Plaintiff would often have to drive home in a drowsy, narcoleptic state. Defendants' new "accommodation" recklessly put both Plaintiff and other drivers at risk.

27. Throughout 2015, Plaintiff would frequently have to call friends and loved ones to pick her up at work as she was too fatigued to drive herself.

28. Throughout 2015, Plaintiff repeatedly complained to Defendants' Human Resource Managers that the new "reasonable accommodation" was not working. Defendants' Human Resource Managers offered no solution and simply told Plaintiff she could "work part time." Plaintiff was shocked by Defendants' lack of effort and compassion.

29. Throughout 2015, Plaintiff continued to request the old reasonable accommodation that allowed her to take two 15-minute breaks. Defendants now felt that such accommodation – although proven effective and more than reasonable – was now "unreasonable."

30. In or around October of 2015, Defendants again demanded Plaintiff transfer stores, this time to Defendants' Old Saybrook, Connecticut store. Defendants forced transfer again caused Plaintiff to suffer economic lose.

31. At Defendants' Old Saybrook store, Plaintiff was allowed to take two 30 minute naps a day.

32. On or about January 31, 2016, Plaintiff sought and was granted a transfer to Defendants' Mohegan Lake, New York store. Plaintiff requested the transfer in order to be closer to home. This transfer again reduced Plaintiff's hours, wages, and chances of promotion.

33. On or about February 1, 2016, Plaintiff began to work at Defendants' Mohegan Lake store. Defendants allowed Plaintiff to take two 30 minute breaks in a Back Office (hereinafter after referred to as "Back Office").

34.  At all times material, Defendants placed a basketball hoop on the door to the Back Office. Defendants' employees and supervisors constantly played basketball against the door to the Back Office, despite knowing Plaintiff was taking her designated accommodation within.

35. Throughout 2016, Defendants' employees and supervisors constantly yelled and talked about Plaintiff outside of the Back Office, saying, among other things, "I wish I could nap all day!" and "Guess who is in there? You know, you know."

36. Throughout 2016, because of the constant belittling and harassment, Plaintiff was unable to actually use her "reasonable accommodation" consistently.

37. Throughout 2016, Defendants' policy dictated that there must be 2 employees on the sales-floor at all times. Often, Plaintiff was 1 of 2 employees on the sales-floor and therefore was unable to adequately use her accommodation.

38. At all times material, Defendants never gave Plaintiff a designated time in which to use her accommodation.

39. In or around April of 2016, Plaintiff applied for a "Solutions Manager" position with Defendants. Defendants interviewed Plaintiff for the position.

40. After Plaintiff was interviewed, Defendants' Supervisor JOSEPH BANDO ("BANDO") told Plaintiff "due to your numbers, we cannot justify hiring you." Plaintiff was shocked. Plaintiff was repeatedly named the top sales representative in all of Defendants' North East region. The only reason Plaintiff's "numbers" were slightly effected was because she was moved from store to store in order to seek a reasonable accommodation. When Plaintiff told BANDO that the only

reason her "numbers" suffered was because of Defendants attempting to accommodate her, BANDO told Plaintiff "it does not matter."

41. In or around April of 2016, Defendants' District Manager MICHAEL CIAVARELLA ("CIAVARELLA") echoed a similar sentiment, telling Plaintiff that "her numbers" during the time of her transfers and search for an accommodation was the only reason why Plaintiff did not get the job.

42. Defendants effectively punished Plaintiff for seeking a reasonable accommodation.

43. Defendants failed to hire Plaintiff for the Solutions Manager position because of Plaintiff's disability.

44. Defendants used the fact that Plaintiff sought a reasonable accommodation as a justification for not hiring her. Defendants held Plaintiff's accommodation against her and failed to hire Plaintiff, despite Plaintiff's stellar background.

45. In or around May of 2016, Plaintiff told Defendants' Supervisor BANDO about the inadequate accommodation and the exacerbating effects it has had on Plaintiff's health. Defendants' Supervisor BANDO took no reasonable or immediate action to help rectify the situation.

46. Throughout 2016, despite knowing about Plaintiff's reasonable accommodation, Defendants' Supervisor BANDO would discourage Plaintiff when she attempted to use her accommodation by stating, among other things, "you need to get back on the floor."

47. Throughout 2016, Plaintiff would frequently have to choose between eating her lunch or taking her accommodation.

48. Throughout 2016, Plaintiff reported the inadequate accommodation to multiple supervisors, including Defendants' Managers "Alero," "Henry," "Danielle," Defendants' District Manager CIAVARELLA, and Defendants' Human Resource Manager STACI HUNT. Collectively, Defendants took no reasonable or immediate action to help accommodate Plaintiff.

49. In or around July of 2016, Plaintiff's doctor ordered that Plaintiff cease working until a reasonable accommodation has been effectively implemented.

50. In or around July of 2016, Defendants' constructively terminated Plaintiff.

51. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

52. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

53. At a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55. Plaintiff hereby claims actual and/or constructive discharge in the event she is so terminated from the Defendants.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER ADA
## (Not Against Individual Defendants)

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

57. Plaintiff claims Defendant violated *Titles I and V of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101* SEC. 12112. *[Section 102]* specifically states: (a) General rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

58. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION FOR
## RETALIATION UNDER ADA
## (Not Against Individual Defendants)

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

60. 42 U.S.C. § 12203(a) holds, in relevant part, that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

61. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF

### ACTION UNDER STATE LAW
### DISCRIMINATION

62. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

63. New York State Executive Law § 296 provides that: "1. It shall be an unlawful

discriminatory practice: "(a) For an employer or licensing agency, because of the age, race,

creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire

or employ or to bar or to discharge from employment such individual or to discriminate against

such individual in compensation or in terms, conditions or privileges of employment."

64. Defendants violated the section cited herein by discharging, creating and maintaining

discriminatory working conditions, and otherwise discriminating against the Plaintiff because of

Plaintiff's disability.

### AS A FOURTH CAUSE OF
### ACTION UNDER STATE LAW
### AIDING & ABETTING

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

66. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory

practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden

under this article, or attempt to do so."

67. Defendants violated the section cited herein as set forth.

### AS A FIFTH CAUSE OF
### ACTION UNDER STATE LAW
### RETALIATION

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

69. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

70. Defendants engaged in unlawful employment practices prohibited by § 296(7) by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

### JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated: November 16, 2017
         New York, New York

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*


Alexander G. Cabeceiras, Esq.
1 Penn Plaza, 49th Floor
New York, NY 10119